UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DEANNE WILLIAMS** | **CIVIL ACTION NO. 12-2835 LEAD** |
| | **CONSOLIDATED WITH NO. 13-1655** |
| **VERSUS** | |
| | **JUDGE ROBERT G. JAMES** |
| **MONROE CITY SCHOOL BOARD** | |
| | **MAG. JUDGE KAREN L. HAYES** |

RULING

Pending before the Court is Defendant Monroe City School Board's ("MCSB") Motion for Summary Judgment [Doc. No. 23]. Plaintiff Deanne Williams ("Williams") filed no opposition to the motion.

For the following reasons, the Motion for Summary Judgment is GRANTED, and Williams' claims against MCSB are DISMISSED WITH PREJUDICE.

**I.   FACTS**

The instant case involves two consolidated Complaints filed by Williams against MCSB, No. 3:12-2835 ("First Complaint") and No. 3:13-1655 ("Second Complaint"). During the time period relevant to the First Complaint, Williams was assigned as a classroom teacher at Wossman High School ("WHS"). During the time period relevant to the Second Complaint, Williams was assigned as a Reading Interventionist at Cypress Point University School ("CPUS").

In 2007, Williams began her employment with MCSB as a certified classroom teacher, and, in 2010, Williams gained tenure. During the 2010-2011 scholastic year, Williams was a classroom teacher at WHS, a MCSB school.

On January 6, 2011, Williams allegedly sustained an ankle fracture at work; however, she continued working until March 17, 2011, when her physician, Dr. William Webb ("Dr. Webb"), took

her off work status. It is undisputed that Williams began to draw workers' compensation benefits because of the injury and that "Williams was a workers' compensation claimant during all dates relevant to the instant lawsuit." [Doc. No. 23-2].

On June 17, 2011, Dr. Webb approved Williams' return to work, but only subject to medical restrictions, which included "no prolong[ed] standing or walking and [she] should not be assigned to a high risk classroom with students who are more likely to be belligerent and physical." [Doc. No. 23-1, p. 6]. It is undisputed that Williams' previous position required work demands that exceeded her medical restrictions.

In June 2011, as required under Louisiana Workers' Compensation law, Williams was referred to a vocational rehabilitation consultant, Susan A. Davidson ("Davidson"), for a Reemployment Assessment. The Reemployment Assessment was to assist with Williams' return to work with MCSB or with a new employer and in a position within her physical abilities, interests, work aptitudes, and pre-injury wage earning capacity.

On August 23, 2011, Williams, Williams' legal counsel, Dr. Webb, and Davidson attended a Rehabilitation Conference. There, Davidson explained that MCSB "was unable to accommodate Ms. Williams for her restrictions as it relates to her usual job assignment." [Doc. No. 24, pp. 59-60]. Davidson sought Dr. Webb's opinion concerning a Functional Job Analysis for multiple positions outside of MCSB, and Dr. Webb advised that there was nothing medically contraindicated from Williams performing five of the presented job alternatives. Williams inquired if there were any jobs which could be available to her through MCSB and inquired into an available position as a librarian. Davidson inquired into available positions and informed Williams that her medical restrictions left her unable to perform essential job functions of a librarian.

In August 2011, Williams filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination, which alleged that she was "denied several requests for reasonable accommodation[s]. On June 27, 2011, [she] was discharged." [Doc. No. 4, p. 2]. There, Williams alleged that "[a]ccording to Dr. Kathleen Harris, Superintendent, the District could not longer employ [her]." [Doc. No. 4, p. 2]. However, contrary to her EEOC Charge, it is undisputed that Williams continued to be employed by MCSB.

Davidson issued at least fourteen Vocational Status Reports between July 7, 2011, and September 20, 2012, in which she "identified a number of job openings for which Ms. Williams could qualify for given her education and work experience, as well as physical capacities." [Doc. No. 4, pp. 16, 19, 34, 58, 64, 71, 97, 100, 109, 120, 131, 157, 188, 211]. Additionally, in a letter dated August 23, 2014, Davidson notified Williams of a job opening for a classroom teacher in Monroe, but not with MCSB. Williams did not apply for the job.

In October 2012, Williams returned to work in the position of Reading Interventionist at CPUS.

On November 5, 2012, Williams filed the First Complaint against MCSB pursuant to the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. In that complaint, Williams alleges that on June 27, 2011, she was discriminated against on the basis of an actual or perceived physical disability. In particular, Williams alleges that MCSB refused to make reasonable accommodations and that Superintendent Harris told her that MCSB could no longer employer her. Williams attached the EEOC Charge of Discrimination to the First Complaint.

On June 13, 2013, Williams filed the Second Complaint against MCSB, also pursuant to the ADA. In that Complaint, Williams alleges that MCSB violated the ADA by wrongfully

discriminating against her and by retaliating against her for filling the EEOC Charge of Discrimination and the First Complaint. Williams also asserts a negligence claim under Louisiana tort law because of MCSB's alleged violation of the ADA. Williams alleges that MCSB effectively demoted her "to a position subordinate to other teachers, where she would 'assist' and be called on to follow their directives," MCSB reduced her salary, and the MCSB Human Resources director refused to speak with her because there was pending litigation. [No. 3:13-1655, Doc. No. 1, p. 2].

On April 25, 2014, MCSB filed the instant Motion for Summary Judgment [Doc. No. 23]. MCSB argues that it is entitled to summary judgment on the First Complaint and Second Complaint, dismissing Williams' claims alleging violations of the ADA and parallel claims asserted under Louisiana tort law.

On April 29, 2014, Williams filed an unopposed motion for extension of time. [Doc. No. 25]. The Court granted the extension, and extended the deadline for Williams to file a response until June 23, 2014. [Doc. No. 29]. Williams did not file an opposition to MCSB's motion. Thus, MCSB's Motion for Summary Judgment is unopposed.

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence

would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, but does not need to negate the elements of the nonmovants' case. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* Unless the moving party meets this burden, the court may not grant the unopposed motion, regardless of whether a response was filed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).

A motion for summary judgment cannot be granted simply because there is no opposition. The court may grant an unopposed motion for summary judgment "if the motion and supporting materials –including the facts considered undisputed– show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3). Summary judgment is mandated when the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1] FED. R. CIV. P. 56(a).

Williams failed to file an opposition and statement of contested material facts, and, thus, MCSB's properly supported statement of uncontested material facts is deemed admitted for the purposes of the instant motion. Local Rule 56.2.

---

[1]The Court notes that the amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the court's analysis. FED. R. CIV. P. 56(a) and advisory committee's note from 2010 (emphasis added).

**B.     ADA**

Williams' claims arise under the ADA. She asserts two types of claims: discrimination and retaliation. The Court will address each in turn.

Under the ADA, a covered employer "shall [not] discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Under the ADA, to 'discriminate' includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (quoting 42 U.S.C. § 12112(b)(5)(A). "When a qualified individual with a disability requests a reasonable accommodation, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation." *Id.* (quoting *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)).

However, "[t]he ADA provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 314 (5th Cir. 2007). "The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform. A disabled employee has no right to a promotion, to choose what job to which he will be assigned, or to receive the same compensation as he received

6

previously." *Griffin*, 661 F.3d at 222 (quoting *Jenkins*, 487 F.3d at 315) (internal quotations omitted).

When an ADA plaintiff relies upon circumstantial evidence, such as here, the Court applies the traditional *McDonnell-Douglas* burden-shifting analysis. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). "Under this framework, a plaintiff must first make a *prima facie* showing of discrimination by establishing that: (1) he is disabled, has a record of disability, or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *Id.* at 279-80. "Once the plaintiff makes his *prima facie* showing, the burden [of production] . . . shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. If the defendant-employer carries its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312-13 (5th Cir. 2004) (citations and internal quotation marks omitted).

The ADA also prohibits retaliation against an employee for asserting rights under that statute. "To establish a *prima facie* case of retaliation under the ADA . . . , a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir.

2013). "If the employee establishes a *prima facie* case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir.2007) (internal citation omitted), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Feist*, 730 F.3d at 454 *(*quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir.1996)).

        1.    **First Complaint**

In Williams' First Complaint, she alleges that she suffered ADA wrongful discrimination based on her wrongful termination and MCSB's failure to grant Williams reasonable accommodations for her alleged disability. Notably, Williams does not oppose MCSB's motion for summary judgment; therefore, MCSB's statement of material fact are undisputed.

First, assuming, *arguendo*, that Williams is disabled within the meaning of the ADA, Williams still fails to make the required *prima facie* showing because undisputed evidence shows that Williams was unqualified for her former position (or any available position) in June 2011 and that she was **not** terminated by MCSB. Williams fails to establish that she was qualified for a classroom teacher position because it is undisputed that Williams could not perform the essential functions of the position in compliance with her medical restriction. Additionally, the undisputed evidence, including Williams' own deposition testimony, shows that Williams was never terminated by MCSB. Therefore, Williams fails to show that she suffered an adverse employment decision.

Alternatively, even if Williams could establish a *prima facie* showing, MCSB has "articulated a legitimate, non-discriminatory reason for the [alleged] adverse employment action": that she could not perform the essential functions of her previous or any open position for which she was qualified. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000). Therefore, Williams' ADA discrimination claims cannot survive the *McDonnell-Douglas* burden shifting analysis.

Additionally, in regards to Williams' request for accommodations, it is undisputed that MCSB engaged in an extensive vocational rehabilitation process, as required under Louisiana Workers' Compensation Law, that took into account Dr. Webb's medical restrictions, and that Williams and Dr. Webb were regularly updated and consulted during the rehabilitation process. This evidences that MCSB engaged in "the flexible, interactive discussions to determine the appropriate accommodation" required by the Fifth Circuit. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (quoting *E.E.O.C. v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir.2009). Williams failed the establish that "an available position exists that [she] was qualified for and could, with reasonable accommodations, perform." *Griffin*, 661 F.3d at 222.

Accordingly, Williams' First Complaint is untenable because Williams has failed to make a *prima facie* showing of discrimination, and, even if Williams could, MCSB has shown a non-discriminatory reason for any alleged adverse employment decisions and that MCSB provided reasonable accommodations. Therefore, MCSB is entitled to judgment as a matter of law in regards to the First Complaint.

    **2.    Second Complaint**

In Williams' Second Complaint, she asserts claims of ADA discrimination and retaliation

based on MCSB's October, 2012 assignment of Williams to a Reading Interventionist position. Williams alleges that her reassignment constituted a demotion because she was "subordinate to other teachers" and suffered a reduction in salary. She also claims the Human Resources director refused to speak with her because of her lawsuit.

     First, to the extent that Williams alleges that she suffered ADA discrimination as a result of her reassignment, the Court finds that she has failed to establish a prima *facie case* or, in the alternative, has failed to overcome MCSB's legitimate, non-discriminatory reasons for her reassignment. As discussed previously, it is undisputed that Williams could **not** perform the essential functions of a classroom teacher, so she cannot show that she was qualified for the allegedly higher paying teacher position, and she has offered no evidence of any other higher paying position for which she was qualified, but MCSB denied her. Moreover, MCSB offered legitimate, non-discriminatory reasons for its reassignment –that this was the first, open position which complied with her medical restrictions. It is undisputed that Williams' assignment to the Reading Interventionist position was the outcome of an extensive vocational rehabilitation process that took into account the work limitations imposed by her physician, the assessments made by the Vocational Rehabilitation consultant and Nurse Case Manager involved in the vocational rehabilitation processes, and the staffing needs of school campuses withing the Monroe City School District. Additionally, after a classroom teacher position that met Williams' medical restrictions became available, Davidson informed Williams' legal counsel of the position, but Williams did not pursue that position. Thus, MCSB is entitled to summary judgment on the discrimination claims in the Second Complaint.

     Likewise, Williams cannot prevail on her retaliation claims. Assuming, *arguendo*, that

Williams establishes a *prima facie* case of retaliation under the ADA, as discussed above, MCSB "state[s] a legitimate, non-retaliatory reason for its decision" –that this was the first, open position which complied with her medical restrictions. *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir.2007). Williams fails to show "'a conflict in substantial evidence' on the question of whether [MCSB] would not have [assigned her to the Reading Interventionist position] 'but for' [Williams filing an EEOC Charge of Discrimination and the First Complaint]." *Feist*, 730 F.3d at 454 *(*quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir.1996) ). The assignment is an accommodation, afforded by MCSB to Williams in response to her medical restrictions, and, as such, "[Williams] has no right to . . . receive the same compensation as [she] received previously." *Griffin*, 661 F.3d at 222 (quoting *Jenkins*, 487 F.3d at 315) (internal quotations omitted). Therefore, Williams cannot avoid summary judgment on the Second Complaint's ADA claims.[2]

### C. Negligence

Finally, Williams asserts a general claim against MCSB based on its ADA violations. Even if such a claim were viable, based on the Court's analysis, this claims, too, fails as a matter of law, and MCSB is entitled to summary judgment.

---

[2]Although MCSB puts forth other arguments in support of its Motion for Summary Judgment, the Court need not address all of them to grant the motion.

### III. CONCLUSION

For the foregoing reasons, MCSB's Motion for Summary Judgment [Doc. No. 23] is GRANTED, and Williams' claims against MCSB are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 2nd day of July, 2014.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE